IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH LEE DAVIS, :
      Plaintiff, :
       :   1:13-cv-2660
v. :
       :   Hon. John E. Jones III
KEVIN BITTENBENDER, *et al.*, :
      Defendants. :

## MEMORANDUM

### February 12, 2016

### I.   BACKGROUND

Plaintiff Joseph Lee Davis ("Davis"), a former federal inmate who, at all times relevant, was incarcerated at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), Minersville, Pennsylvania, commenced this *Bivens* action on October 29, 2013.[1] (Doc. 1). The matter is proceeding *via* an amended complaint filed on September 30, 2014. (Doc. 36-1). Therein, Davis alleges that Defendants Kevin Bittenbender ("Bittenbender), J.L. Norwood ("Norwood"), Roberta Truman ("Truman"), and an unknown regional counsel staff member, violated his First, Fourth, Fifth, Eighth and Thirteenth Amendment rights,

---

[1] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

essentially as a result of their handling and disposition of a disciplinary action against Davis. (*Id.* at pp. 1-3, 9-12).

All Defendants, except the John Doe Defendant, filed a motion (Doc. 60) to dismiss pursuant to Federal Rule of Civil Procedure 12(b) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), on June 26, 2015.[2] Defendants filed their supporting brief (Doc. 62) and statement of material facts (Doc. 61) on July 10, 2015. On August 6, 2015, Davis filed an untimely motion (Doc. 63) for an extension of time to respond to Defendants' motion. An Order entered affording Davis until August 28, 2015, to respond and cautioning him that, in accordance with the Local Rules of Court, his failure to respond to the statement of material facts would result in the facts being deemed admitted , and his failure to file an opposition brief would result in the motion being deemed unopposed. Davis failed to respond. For the reasons set forth below, the statement of material facts will be deemed admitted and the motion for summary judgment will be deemed unopposed and granted. With respect to the John Doe Defendant, because he was unable to be identified, he was not served. However, the complaint against him will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[2] It recently came to the Court's attention that "The Office of General Counsel" and "Central Office" were included as named Defendants on the docket in this matter. However, these entities are not named in the Amended Complaint. (Doc. 36-1). All indications are that this was simply a docketing error. Consequently, on February 10, 2016, the Court verbally directed the Clerk of Court to note on the docket the termination of these entities as named Defendants.

## II.   LEGAL STANDARDS OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

In addition, because Davis is proceeding *in forma pauperis*, the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e)(2). Section 1915(e)(2) states, in pertinent part, "the court shall dismiss the case at any time if the court determines that (B) the action . . . (ii) fails to state a claim on which relief may be granted. . . ." 28 U.S.C. §1915(e)(2)(B)(ii). The applicable standard of review for the failure to state a claim provision is the same as the standard for a motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion, the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin,*

*Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**III.   STATEMENT OF MATERIAL FACTS**

"A motion for summary judgment filed pursuant to Federal Rule of Civil Procedure FED. R. CIV. P. 56 shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." *See* L.R. 56.1.  The opposing party shall file a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried.  *Id.*  "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *Id.*  Because Davis failed to oppose Defendants' statement of material facts, all facts contained therein are deemed admitted.

During a random cell search conducted at FCI-Schuylkill on January 29, 2010, a correctional officer discovered that Davis's mattress was cut from one side to the other and contained a second mattress inside.  (Doc. 61, ¶¶ 1-2).  Both mattresses were damaged and altered and secured together with tape.  (*Id.* at 2-3).

Davis was issued Incident Report No. 1972880 for a violation of Federal Bureau of Prisons ("BOP") disciplinary Code 218, Destroying, Altering, or Damaging Property Valued in Excess of $100.00. (*Id.* at 4).

On February 9, 2010, Disciplinary Hearing Officer ("DHO") Bittenbender conducted a disciplinary hearing and concluded that Davis committed the prohibited act. (*Id.* at 5). Davis timely appealed to the Regional Office alleging that the DHO "did not take into account all of the evidence involved," that he was "misrepresented in the DHO report" as his statement was not an admission of guilt, and that staff were aware of the altered mattress prior to the cell search. (*Id.* at 7).

On March 25, 2010, the Regional Office remanded the matter to the DHO for a rehearing because, according to BOP records, the disciplinary documents were lost. (*Id.* at 8, 12-13).

The incident report was reissued on April 15, 2010, and the second disciplinary hearing was conducted on April 27, 2010. (*Id.* at 14-15). At the hearing, Davis submitted a written statement requesting that the DHO review video surveillance and the unit cell search log. (*Id.* at 16). Davis testified that he was aware his assigned mattress was in a damaged or altered condition when he moved into that cell nine months prior. (*Id.* at 17). Based on Davis's statement that he was aware his mattress was damaged or altered and that he failed to report it, the

DHO found that he committed the prohibited act of destroying, altering, or damaging property valued in excess of $100.00 on January 29, 2010. (*Id*. at 18-19). He was sanctioned to thirty days in disciplinary segregation (suspended 180 days pending clear conduct), six month loss of commissary privileges; twenty-seven days disallowance of good conduct time, and monetary restitution in the amount of $220.20. (*Id*. at 21-22).

Thereafter, Davis filed five administrative remedy appeals with the Regional Office alleging that the DHO was negligent in misplacing the incident report and other documents. (*Id.* at 24, 26). All of the appeals were rejected or voided for various reasons, including failure to submit a copy of the DHO report, the submission of more than one continuation page, the filing of two appeals of the same DHO decision on the same day (June 7, 2010) and, the need to first file a remedy at the institution level because the issue was not sensitive. (*Id.* at 25).

On June 22, 2010, Davis filed an appeal with the Regional Office of the DHO's April 27, 2010 rehearing and decision, arguing that the DHO failed to comply with BOP policy rules because, *inter alia*, he did not consider the cell search log, video surveillance log, or reports of any missing mattresses. (*Id.* at 32-33). On July 19, 2010, the Regional Office issued a decision finding that the DHO's decision was based upon the greater weight of the evidence and denying

the appeal. Davis filed an appeal with the Central Office on August 23, 2010. (*Id.* at 39). On March 22, 2011, the appeal was denied on the basis that there was support in the record that Davis committed the prohibited act and that there was no evidence that his due process rights were violated. (*Id.* at 40, 44).

On November 30, 2011, Davis filed a petition for writ of habeas corpus challenging the disciplinary proceedings in this Court. (*Id.* at 45). On March 6, 2012, the petition was granted inasmuch as the matter was remanded to the DHO to either view previously unexamined potentially exculpatory evidence or provide further explanation why the potentially exculpatory evidence would not be viewed, considered, or disclosed. (*Id.* at 46, citing *Davis v. Hufford*, No. 1:11-cv-2219, 2012 WL 727697 (M.D. Pa. Feb. 10, 2012) (Carlson, M.J.), report and recommendation adopted in 2012 WL 744984 (M.D. Pa. Mar. 6, 2012) (Jones, J.)).

In accordance with the Court's directive, on April 3, 2012, DHO Lieutenant Reed ("Reed) conducted a re-hearing.[3] (*Id.* at 48-49, Doc. 61-1, ¶ 7). During the re-hearing, DHO Reed found the proper charge to be Code 305, possession of contraband but, because of the passage of over two years from the date of the incident, he decided not to amend the charge or reinitiate the disciplinary process. (Doc. 61, ¶¶ 50-51). He expunged the incident report, reinstated Davis's good

---

[3]DHO Bittenbender was on active duty military leave with the United States Army from October 1, 2011, through April 28, 2012. (Doc. 61,¶ 48).

conduct time, reimbursed the restitution payments, and removed the sanction of loss of commissary privileges. (*Id.* at 52-53).

The BOP maintains a computerized database designed to track all formal administrative remedy requests filed by federal prisoners; all administrative remedies, whether accepted or rejected, are entered into the BOP computerized database. (*Id.* at 65-66). However, actual copies of rejected administrative remedies are not maintained. (*Id.* at 67). A search of BOP records revealed that, as of June 9, 2014, since the inception of his incarceration with the BOP, Davis filed a total of twenty administrative remedies. (*Id.* at 68). Sixteen of the administrative remedies were filed after the January 29, 2010 incident report. (*Id.* at 69). Seven of the sixteen are unrelated to the claims asserted in this action. (*Id.* at 70). The remaining nine concern the February 9, 2010, and April 27, 2010, disciplinary hearings and were filed prior to the Court's decision on his habeas petition. (*Id.* at 71). None of those raised the alleged violations of his First, Fourth, Fifth, Eighth, or Thirteenth Amendment rights. (*Id.*).

**IV.    DISCUSSION**

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.

*See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Specifically, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the statute's language makes clear, the exhaustion of available administrative remedies prior to filing suit is mandatory. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir.2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894–95 (S.D.N.Y. 1998)). Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Small v. Camden County*, 728 F.3d. 265, 268 (3d Cir. 2013); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Woodford v. Ngo*, 548 U.S. 81, 90–92 (2006). It requires compliance with the prison's "deadlines and other critical procedural rules." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The level of detail necessary in a grievance to comply with the grievance procedures will

vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 211–212 (2007).  "[F]ailure to satisfy the procedural rules of the [BOP's] administrative process constitutes a procedural default." *Moscato*, 98 F.3d at 760–761 *(citing Francis v. Rison*, 894 F.2d 353,355 & n. 2 (9th Cir. 1990); *Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir.1986)).

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a Request to the warden within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the warden's response may submit an appeal to the Regional Director of the BOP within 20 days of the date the warden signed the response.  28 C.F.R. § 542.15(a).  The inmate may then appeal to the BOP's General Counsel within 30 days of the day the Regional Director signed the response. *Id.*  Appeal to the General Counsel is the final administrative appeal. *Id.*  If responses are not received by the inmate within the time allotted for reply, "the

inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. An exception to the initial filing at the institution applies to appeals of a DHO decision. 28 C.F.R. § 542.14(d)(2). DHO appeals bypass the requirement of filing at the institution level and are to be submitted directly to the Regional Office. *Id.*

As noted by Defendants, the PLRA requires Davis to pursue administrative relief with regard to his *Bivens* claims prior to filing suit in federal court. Although he undisputedly exhausted the administrative review process with regard to the DHO proceedings, at no point following the resolution of his habeas petition in this Court, or the final disposition of the DHO proceedings, did he raise any of the alleged *Bivens* claims in the administrative arena. Consequently, Defendants are entitled to an entry of summary judgment due to Davis's failure to exhaust his administrative remedies. Likewise, the claims set forth against Defendant John Doe in the amended complaint are subject to dismissal based on Davis's failure to exhaust his administrative remedies.

## V. CONCLUSION

For the foregoing reasons, the motion (Doc. 60) for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on behalf of Defendants Bittenbender, Norwood and Truman, will be deemed unopposed and granted. The

claims set forth in the amended complaint against Defendant John Doe are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

A separate order will enter.